UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-310-GW-GJSx | | Date | April 24, 2020 |
|---|---|---|---|---|
| Title | *Ekorus, Inc. v. Elohim EPF USA, Inc., et al.* | | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:**    **IN CHAMBERS - RULINGS ON DEFENDANT'S SPECIAL MOTION TO STRIKE THE SECOND CLAIM FOR RELIEF OF THE FIRST AMENDED COMPLAINT [17]; and DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT [19]**

The Court concludes that the present motions can be ruled upon without the need for oral argument. Thus, pursuant the C.D. Cal. L.R. 7-15, the April 27 hearing is taken off-calendar. The Court grants Defendant's motion to strike Plaintiff's second claim for relief. It denies Defendant's motion to dismiss.

The Court sets a Rule 26(f) scheduling conference for May 18, 2020 at 8:30 a.m., with a joint report to be filed by May 13.

|  | : |
|---|---|
| Initials of Preparer | JG |

___Ekorus, Inc. v. Elohim EPF USA, Inc.___, Case No. 2:20-cv-00310-GW-(GJSx)
Rulings on: (1) Special Motion to Strike the Second Claim for Relief of the First
Amended Complaint, and (2) Motion to Dismiss First Amended Complaint

## I. __Introduction__

After filing an initial Complaint on January 13, 2020, Ekorus, Inc. ("Plaintiff") filed a First Amended Complaint ("FAC") in this action on March 9, 2020 (Docket No. 15), asserting four causes of action against Elohim EPF USA, Inc. ("Defendant"): 1) copyright infringement (17 U.S.C. § 101, et seq.); 2) unjust enrichment; 3) federal civil RICO (18 U.S.C. § 1962(c)); and 4) declaratory relief.[1]  In the FAC, Plaintiff alleges the following.

Plaintiff acquired licenses and exclusive rights to certain musical compositions independently created by authors in the Republic of Korea.  *See* FAC ¶ 9.  Defendant represents itself as a subpublisher of music publishers in the Republic of Korea, and purports to control the rights to license those songs in the United States.  *See id.* ¶ 2.  This includes compositions the rights to which are held by Plaintiff.  *See id.* ¶¶ 11-13 & Exh. A.  The creators of these compositions have not sold, assigned or granted licenses for any rights to these compositions to Defendant or any other person or entity.  *See id.* ¶ 14.

From approximately 2014 to the present, Defendant filed numerous copyright litigation lawsuits against karaoke bars in Los Angeles and its Koreatown neighborhood. *See id.* ¶ 15.  Plaintiff became aware of this pattern of lawsuits, and learned that Defendant was falsely claiming rights to compositions that were in fact licensed to Plaintiff.  *See id.* ¶¶ 16, 18.  In addition to this behavior forming the basis of Plaintiff's copyright infringement claim, the monetary gain Defendant accrued through these lawsuits is the focus of Plaintiff's four-paragraph unjust enrichment claim as well.  *See id.* ¶ 24 (alleging monetary gain "by engaging in a series of malicious lawsuits for which they have no standing"); *id.* ¶ 25 ("Defendants have obtained sizable profits from their multitudinous lawsuits against various karaoke bars, spuriously claiming ownership of Plaintiff's copyrighted work and using the legal process as a shield for their reprehensible actions.").  Defendant's use of the mails to send numerous demand letters to karaoke bars

---

[1] The original complaint had causes of action for copyright infringement, fraud and unfair business competition in violation of Cal. Bus. & Prof. Code § 17200.  *See* Docket No. 1.

gives rise to the RICO claim.  *See id.* ¶¶ 35-36.

Defendant now moves, pursuant to California Code of Civil Procedure § 425.16 (California's "anti-SLAPP" law/procedure), to strike the FAC's second claim.  It also separately moves to dismiss all four claims in the FAC – the first three pursuant to Federal Rule of Civil Procedure 12(b)(6), and the last pursuant to Federal Rule of Civil Procedure 12(b)(1).

## II. <u>Anti-SLAPP Motion</u>

California's anti-SLAPP procedure – which applies, at least in part, in federal court[2] – is designed to prevent a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech."  Cal. Code Civ. Proc. § 425.16(b)(1).  In a motion to strike under section 425.16, the court engages in a two-part analysis:  (1) the court decides whether the moving party has made a threshold showing that the challenged causes of action arise from a protected activity; and (2) if such a showing has been made, the burden then shifts to the opposing party to demonstrate a probability of prevailing on the merits of their claims.  *See Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal.4th 53, 67 (2002); *see also Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1119 (9th Cir. 2017).

As the foregoing suggests, the moving party bears the initial burden of establishing a *prima facie* showing that the opposing party's cause of action arises from the defendant's free speech or petition activity.  *See Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1188 (9th Cir. 2017); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013); *Zamani v. Carnes*, 491 F.3d 990, 994 (9th Cir. 2007).  "A defendant meets [its burden under section 425.16(b)(1)] by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e)…."  *City of Cotati v. Cashman*, 29 Cal.4th 69, 78 (2002) (quotation marks omitted).  The statute includes four categories of protected conduct in that subdivision:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in

---

[2] In federal court, section 425.16 of the California Code of Civil Procedure applies to "state law claims which . . . are asserted pendent to federal question claims," *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 63 F.Supp.2d 1127, 1130 (N.D.Cal.1999), as is the case with respect to Plaintiff's claim for unjust enrichment.

> connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e).

The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to its asserted liability – and whether that activity constitutes protected speech or petitioning." *Navellier v. Sletten*, 29 Cal.4th 82, 92 (2002) (emphasis in original). Thus, the critical question is whether Plaintiff's claim is *based on* an act or acts in furtherance of the right of petition or free speech. *See Jordan-Benel*, 859 F.3d at 1190; *City of Cotati,* 29 Cal.4th at 78. Whether the anti-SLAPP statute applies is determined by the "principal thrust or gravamen" of plaintiff's claim. *See Martinez v. Metabolife Int'l, Inc.,* 113 Cal.App.4th 181, 188 (2003).

Here, there would appear to be no question that the FAC's second claim is subject to the anti-SLAPP statute. Plaintiff's allegations center on Defendant's conduct – and presumably its statements – during, or in connection with, multiple prior copyright infringement lawsuits Defendant prosecuted against third parties. *See* FAC ¶¶ 22, 24-25. This falls squarely within the coverage of section 425.16. *See Navellier*, 29 Cal.4th at 90 ("A claim for relief filed in federal district court indisputably is a 'statement or writing made before a . . . judicial proceeding.'") (quoting Cal. Code Civ. Proc. § 425.16(e)(1)); *see also Neville v. Chudacoff*, 160 Cal.App.4th 1255, 1261 (2008); Cal. Code Civ. Proc. § 425.16(e)(1), (2).

Plaintiff attempts to avoid what would appear to be a fairly-obvious conclusion by asserting that "illegal conduct" does not fall within any of the categories under subdivision (e) of Section 425.16, relying upon two cases for this proposition: *Lefebvre v. Lefebvre*, 199 Cal.App.4th 696, 705 (2011) and *Flatley v. Mauro*, 39 Cal.4th 299, 305 (2006). It points to allegations made in support of the FAC's RICO claim – allegations which, as the FAC is structured, come *after* the unjust enrichment claim, and are therefore *not* incorporated into the allegations supporting that particular claim – as (in RICO terms) predicate acts. Plaintiff also directs the Court to two declarations filed in

3

support of its opposition on this motion.  *See* Declaration of Jae Hak Chun [in] Support of Opposition to Defendant's Motion to Strike, Docket No. 27-2, ¶¶ 3-7; Declaration of Woong Jin in Support of Opposition to Defendant's Motion to Strike, Docket No. 27-3, ¶¶ 3-6.

It is clear that merely asserting the existence of illegal activity and, indeed, even providing *some evidence* of illegal activity, is insufficient to preclude a defendant's use of California's anti-SLAPP statute.  The exception here is much more circumscribed than Plaintiff would like.  *Flatley* established that only where a "defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law" will a defendant be unable to attempt to take advantage of California's anti-SLAPP procedure.  *Flatley*, 39 Cal.4th at 320; *see also City of Montebello v. Vasquez*, 1 Cal.5th 409, 424 (2016) ("We made it clear in *Flatley* that conduct must be illegal as a matter of law to defeat a defendant's showing of protected activity. The defendant must concede the point, or the evidence conclusively demonstrate it, for a claim of illegality to defeat an anti-SLAPP motion at the first step."); Weil & Brown, Calif. Prac. Guide:  Civ. Proc. Before Trial (The Rutter Group 2019), § 7:838; *id.* § 7:840 ("If plaintiff claims that defendant's speech or petitioning activity is illegal and thus not protected, 'plaintiff bears the burden of conclusively proving the illegal conduct.'  *Defendant* need not prove its conduct was *legal* in order to meet its burden under the first prong of the anti-SLAPP statute.") (quoting *Cross v. Cooper*, 197 Cal.App.4th 357, 385 (2011)).  In *Lefebvre* (the other case Plaintiff relies upon here), the court simply applied *Flatley*'s rule to a situation where the defendant did not contest that she had filed "an illegal, false criminal report."  *Lefebvre*, 199 Cal.App.4th at 705.

Reflecting the California Supreme Court's pronouncements on this topic, the Ninth Circuit has recognized the perhaps somewhat-limited utility of the argument Plaintiff now tries to rely upon:

> [U]nless the conduct conclusively is shown or admitted to be illegal, a defendant can still invoke the anti-SLAPP statute.  In particular, the California Supreme Court held the statute may be invoked unless the conduct is "illegal as a matter of law," meaning the defendant "concedes" or "uncontroverted and conclusive evidence" establishes the speech or petitioning activity is illegal.  To find otherwise would eviscerate the anti-SLAPP statute's protections because the plaintiff could preclude the

4

statute's application simply by alleging criminal conduct by the defendant. *Safari Club*, 862 F.3d at 1121 (quoting *Flatley*, 39 Cal.4th at 320); *see also Doe v. Gangland Prods., Inc.*, 730 F.3d 946, 954 n.2 (9th Cir. 2013). Here, not only has Defendant not "conceded" that it engaged in illegal activity when it filed the earlier copyright infringement lawsuits (and sent demand letters in the leadup thereto), Plaintiff has alleged that Defendant collected money as a result of those efforts, and the judicially-noticeable record demonstrates that Defendant in fact prevailed (at least in part) on at least certain summary judgment motions filed in that litigation and that the federal court handling the matter determined that Defendant had established a proper chain-of-title with respect to the copyrights as part of those rulings. *See* Docket No. 18-3, 18-4. In other words, even though Plaintiff has introduced evidence attempting to prove the contrary, the evidence on any "illegality" is far from "conclusive" on that point. Plaintiff therefore cannot rely upon *Flatley* or *Lefebvre* to prevent Defendant from demonstrating what is otherwise obvious – the conduct it is charged with engaging in falls squarely within Section 425.16(e). As a result, Defendant has prevailed at the first step of the anti-SLAPP process.

Where the moving party satisfies its *prima facie* burden at the first step, "[t]he burden then shifts to the plaintiff…to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Makaeff*, 715 F.3d at 261. The Ninth Circuit previously took the approach that, at the second step of the anti-SLAPP process, a plaintiff must demonstrate that the complaint is "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2009); *see also Makaeff*, 715 F.3d at 261. Under that approach to the second step, the required probability of prevailing "need not be high." *Hilton*, 599 F.3d at 908. However, "a defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or 'when no evidence of sufficient substantiality exists to support a judgment for the plaintiff.'" *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001).

More-recently, however, the Ninth Circuit has instructed courts that where, as is the case here, a defendant's anti-SLAPP motion is directed at the legal viability of a

claim, as opposed to the *factual/evidentiary* sufficiency of a claim, a responding plaintiff need not provide evidence – the question is only the sufficiency of the plaintiff's claim under a Rule 12(b)(6) standard. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 833-35 (9th Cir. 2018), *cert. denied*, 139 S.Ct. 1446 (2019).[3]  Defendant's second-step argument here is not that Plaintiff has insufficient facts or evidence to support a claim for unjust enrichment, but instead – at least in part – that the claim simply is not viable as a matter of law because it is based upon conduct that, according to Defendant, is clearly protected by California's litigation privilege.[4]  As a result, the Court believes that *Planned Parenthood* establishes the appropriate manner for assessing the anti-SLAPP second-step here.

Section 47(b) of the California Civil Code includes within the definition of a "privileged publication" "one made . . . [i]n any . . . judicial proceeding," with certain exceptions thereafter recited.  Cal. Code Civ. Proc. § 47(b).  Consequently, "California's litigation privilege applies to any communication '(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action.'" *Graham-Sult v. Clainos*, 738 F.3d 1131, 1147 (9th Cir. 2013) (quoting *Mansell v. Otto*, 108 Cal.App.4th 265, 271 (2003)).  But it is not limited merely to statements made in court or in court-filings.  "The absolute privilege attaches to any publication that has any reasonable relation to the action and is permitted by law if made to achieve the objects of the litigation, 'even though the publication is made outside the courtroom and no function of the court or its officers is invoked.'" *Smith v. Hatch*, 271 Cal.App.2d 39, 45 (1969) (quoting *Albertson v. Raboff*, 46 Cal.2d 375, 381 (1956)); *see also Rubin v. Green*, 4 Cal.4th 1187, 1193 (1993) ("For well over a century, communications with

---

[3] There is perhaps a question – that this Court is in no position by itself to answer – as to whether the three-judge panel in *Planned Parenthood* (as opposed to the Ninth Circuit sitting *en banc*) had the authority to shift or modify the Ninth Circuit's approach on the analysis required at the second step under California's anti-SLAPP analysis.

[4] "The litigation privilege is … relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to demonstrate a probability of prevailing." *Flatley*, 39 Cal.4th at 323; *see also McGarry v. Univ. of San Diego*, 154 Cal.App.4th 97, 108 (2007) ("In [the second step], the plaintiff must show . . . that the claim is legally sufficient . . . .  In making this assessment, the court must . . . examine whether there are any constitutional or nonconstitutional defenses to the pleaded claims and, if so, whether there is evidence to negate any such defenses.") (internal citations omitted); *Graham-Sult v. Clainos*, 756 F.3d 724, 741 (9th Cir. 2014).

'some relation' to judicial proceedings have been absolutely immune from tort liability by the privilege codified as section 47(b).").  Indeed, it may extend even to illegal conduct.  *See Flatley*, 39 Cal.4th at 324 ("Applying the litigation privilege to some forms of unlawful litigation-related activity may advance those broad goals [of the litigation privilege] notwithstanding the 'occasional unfair result' in an individual case."); *see also Graham-Sult v. Clainos*, 756 F.3d 724, 741 (9th Cir. 2014) ("The privilege 'immunizes defendants from virtually any tort liability (including claims for fraud), with the sole exception of causes of action for malicious prosecution.'") (quoting *Olsen v. Harbison*, 191 Cal.App.4th 325, 333 (2010)); *Steiner v. Eikerling*, 181 Cal.App.3d 639, 643 (1986) (holding that privilege encompassed filing of forged will in probate court).  As a result, Plaintiff's assertions about illegality, made in the context of its attempt to avoid application of the anti-SLAPP statute entirely, have no applicability to a second-step analysis based on application of the litigation privilege.

Filing copyright infringement lawsuits obviously falls within the litigation privilege.  *See Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal. 4th 1232, 1249 (2007) ("We contemplate no communication that is more clearly protected by the litigation privilege than the filing of a legal action.").  So too does the sending of demand letters pre-litigation so long as the letter relates to litigation contemplated in good faith and under serious consideration (a qualification easily demonstrated here insofar as litigation *actually resulted*, as Plaintiff itself acknowledges in its allegations).  *See Malin v. Singer*, 217 Cal.App.4th 1283, 1300-01 (2013).

Plaintiff's sole argument for avoiding the force of the litigation privilege here is that Section 47(b) is a general statute and that, under one of the common rules of "statutory construction," such a statute will sometimes give way to an action filed under a more-specific statute, or what Plaintiff terms "other coequal state laws."  But Plaintiff has provided no case that has found this to be true in the context of a claim for unjust enrichment.  Nor should that be surprising, as unjust enrichment is a common law concept/claim, not one based in statute.  As a result, no rule of statutory construction could save it from the effects of Civil Code Section 47(b).

Instead, Plaintiff attempts to rely, by analogy, on a case – *People v. Persolve, LLC*, 218 Cal.App.4th 1267, 1272 (2013) – dealing with California's statutory unfair

competition law, noting that while that statute was not more specific than Section 47(b), it allowed for litigants to "borrow" from other statutes that *were* more specific.  Here, while it presents no unfair competition claim, Plaintiff argues that it effectively has "borrowed" from its statutory claim for copyright infringement, because its allegations in support of the copyright infringement claim are, in effect, the same as those pled in support of the unjust enrichment claim.  But the analogy does not work.  Borrowing from another statute is not one way that the California Legislature has – by statute – allowed a plaintiff to state a claim for unjust enrichment, as it has for a statutory unfair competition claim under Business and Professions Code § 17200.  *See Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1168 (9th Cir. 2012).

Plaintiff has not demonstrated that he has any possibility of overcoming the litigation privilege resident in California Civil Code § 47(b) with respect to his claim for unjust enrichment, a conclusion that the Court can reach simply by reviewing the allegations in the FAC.  Because Plaintiff has not demonstrated any ability to avoid the litigation privilege defense, whether or not he has demonstrated "minimal merit" of his unjust enrichment claim, and whether he could uncover more facts/evidence in that regard given the opportunity to conduct discovery, is irrelevant.[5]  Plaintiff therefore fails to satisfy its burden at the second-step of the applicable anti-SLAPP analysis.  The Court therefore has no need to reach Defendant's alternative defensive-argument that Plaintiff's unjust enrichment claim would be preempted by the Copyright Act.

There does not appear to be any possibility of amending this claim based upon conduct that is clearly subject to the litigation privilege, nor does Plaintiff appear to request an opportunity to amend in its Opposition brief to the anti-SLAPP motion.  As such, the Court will grant Defendant's anti-SLAPP motion as to Plaintiff's second claim for relief without leave to amend.

Because the Court will strike the FAC's second claim for relief pursuant to California's anti-SLAPP statute, only the FAC's three other claims remain for

---

[5] Additionally, it cannot be argued that Plaintiff's unjust enrichment claim is merely a variation of its underlying copyright infringement cause of action.  First, Plaintiff already has a copyright infringement claim in both the original complaint and the FAC.  Second, the thrust of the unjust enrichment claim, as it is currently pled, arises from the Defendant's use of litigation to gain the moneys which Plaintiff now seeks to reclaim.  Hence, the litigation privilege obviously comes into play as to the second cause of action as opposed to the other claims.

consideration in connection with Defendant's motion to dismiss, to which the Court now turns.

### III.  <u>Motion to Dismiss</u>

Under Rule 12(b)(6), a court must (1) construe a complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  The Court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).  However, a plaintiff must also "plead 'enough facts to state a claim to relief that is plausible on its face.'"  *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570); *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases").  A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In its consideration of the motion, the court is generally limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the

pleading."  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruling on other grounds recognized in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).  "A court may [also] consider evidence on which the complaint 'necessarily relies' if:  (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion."  *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).[6]

Defendant's Rule 12(b)(6) challenge to Plaintiff's first and third claims is based on the *Noerr-Pennington* doctrine.  "The *Noerr–Pennington* doctrine shields individuals from, *inter alia*, liability for engaging in litigation."  *Microsoft Corp. v. Motorola, Inc.*, 795 F.3d 1024, 1047 (9th Cir. 2015).  The doctrine also reaches pre-litigation communications such as cease-and-desist letters.  *See Rock River Commc'ns, Inc. v. Universal Music Grp., Inc.*, 745 F.3d 343, 347, 351 & n.1 (9th Cir. 2014).  The principal issue the Court sees here is the nature/definition of a "sham litigation" exception to *Noerr-Pennington* doctrine.

Defendant relies upon what is perhaps the *most-common* explanation of how the sham litigation-analysis works.  That explanation is usually some variation of the following (set forth most-recently in a 2017 Ninth Circuit decision):  "Although *Noerr-Pennington* immunity extends to judicial proceedings, it does not protect persons engaging in sham litigation.  Litigation will be labeled a sham if it is 'objectively baseless,' and 'conceal[s] an attempt to interfere directly with the business relationships of a competitor.'"  *Int'l Longshore & Warehouse Union v. ICTSI Or., Inc.*, 863 F.3d 1178, 1187-88 (9th Cir. 2017) (quoting *USS-POSCO Indus. v. Contra Costa Cty. Bldg. & Constr. Trades Council, AFL-CIO*, 31 F.3d 800, 810 (9th Cir. 1994)) (omitting internal quotation marks); *see Rock River*, 745 F.3d at 351 ("A 'sham' lawsuit is one where the suit is both 'objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits' and 'an attempt to interfere directly with the business relationship of a competitor through the use of the governmental process – as opposed to the outcome of that process.'") (quoting *Prof'l Real Estate Investors, Inc. v. Columbia*

---

[6] The Court dispenses with any need to discuss the standards applicable to a Rule 12(b)(1) motion because Defendant's jurisdictional challenge to Plaintiff's fourth claim clearly fails (at least on this motion), as discussed *infra*.

*Pictures Indus., Inc.*, 508 U.S. 49, 60-61 (1993)); *see also Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 556 (2014) ("In [*Professional Real Estate Investors*], we held that to qualify as a 'sham,' a 'lawsuit must be objectively baseless' and must 'concea[l] an attempt to interfere directly with the business relationships of a competitor....'") (quoting *Prof'l Real Estate Investors*, 508 U.S. at 60-61) (omitting internal quotation marks).

Applying that test, Defendant argues that there is no need at all to reach the second step concerning interference with the business relationships of a competitor (though it has arguments for why Plaintiff cannot satisfy that step also) because its success in the earlier copyright infringement lawsuits – which it evidences in this motion through judicially-noticeable materials from that litigation – demonstrates conclusively that its litigation was not "objectively baseless."  This contrasts with, for example, *Rock River*, where a party sending cease-and-desist letters had never actually followed through by filing an infringement suit.  *See Rock River*, 745 F.3d at 352-53.  At the summary judgment stage, faced with those circumstances, the Ninth Circuit stated that "[v]iewed in the light most favorable to Rock River, UMG's transmission of cease-and-desist letters but failure to initiate litigation suggests that UMG is hoping to enforce its claim to exclusive licensing rights through the threat of litigation rather than through actual litigation." *Rock River*, 745 F.3d at 352–53.

The difficulty with Defendant simply attempting to rely upon that formulation of the test in order to prevail on Plaintiff's first and third claims at this time is that Plaintiff has been able to locate a different characterization of the "sham" test that it believes is better-suited to the situation (or at least the allegations) at issue here.  Plaintiff relies upon *Kottle v. Northwest Kidney Centers*, 146 F.3d 1056 (9th Cir. 1998) and *Liberty Lake Investments, Inc. v. Magnuson*, 12 F.3d 155 (9th Cir. 1993).  Under this approach, the test Defendant relies upon (cited above) is – as described in *Kottle* – merely one of three "circumstances" in which the Ninth Circuit recognizes the "sham" exception when a court of law is the type of governmental entity involved in a situation raising *Noerr-Pennington*.  *See Kottle*, 146 F.3d at 1060.  The third such circumstance is described in *Kottle* as follows:  "in the context of a judicial proceeding, if the alleged anticompetitive behavior consists of making intentional misrepresentations to the court, litigation can be

11

deemed a sham if 'a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy.'" *Id.* (quoting *Liberty Lake*, 12 F.3d at 158).

*Liberty Lake* had earlier observed that the viability of this type of sham exception to *Noerr-Pennington* had been reserved for consideration by a footnote in the Supreme Court's 1993 decision in *Professional Real Estate Investors*. *See* 12 F.3d at 158-59. As it described the process of analysis under this strain of the sham exception, *Liberty Lake* instructed that "[r]ead in context with the entire *Professional Real Estate Investors* opinion, footnote 6 does not *obviate application of* the Court's two-part test for determining sham litigation *in the absence of proof that* a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive[d] the litigation of its legitimacy." *Id.* at 159 (emphasis added). Here, Plaintiff purports to have such proof.

This particular "sham" avenue did not die off with *Kottle* in 1998. The Ninth Circuit again recognized the third "circumstance" as recently as 2009. *See Kearney v. Foley & Lardner, LLP*, 590 F.3d 638, 646 (9th Cir. 2009) (citing *Kottle*, recognizing the third circumstances as "where the allegedly unlawful conduct 'consists of making intentional misrepresentations to the court' and those misrepresentations or the 'party's knowing fraud upon . . . the court deprive the litigation of its legitimacy,'" and concluding that "[w]e are persuaded that Defendants' alleged misconduct here was precisely the sort the sham exception was created to address"); *see also Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 936, 938 (9th Cir. 2006) (referencing *Kottle* as describing a "three pronged sham litigation exception" and identifying "three circumstances in which the sham litigation exception might apply"). As suggested by the process of analysis first described in *Liberty Lake*, *Kearney* entered into no analysis at all of whether any litigation was or would be "objectively baseless" before proceeding directly to the third circumstance of intentional misrepresentations and fraud upon the court.

Moreover, in that case the Ninth Circuit observed – as is true here – that the case was only at the motion to dismiss stage, meaning that the plaintiff's allegations of intentional misrepresentations to the court and fraud upon the court through suppression of evidence had to be credited as true. *See Kearney*, 590 F.3d at 646-47; *see also Kottle*, 146 F.3d at 1063 (describing the type of allegations that would be necessary to be able to

12

rely upon the third circumstance of sham litigation exceptions in order to avoid *Noerr-Pennington* defense on Rule 12(b)(6) motion).[7]  Defendant has not argued that Plaintiff's allegations are not sufficient to fit within this formulation of the exception – indeed, Defendant has not addressed the formulation *at all*.

Despite being confronted, in Plaintiff's Opposition brief, with Plaintiff's argument based upon this third type of "circumstance" in which the sham exception applies (along with the argument that, under the third circumstance, there is no need to even ask the "objectively baseless" question), Defendant makes *zero* mention of it in its Reply brief.  It cites *Kottle* and *Sosa*, but for different purposes.  It does not do even that with respect to *Kearney* or *Liberty Lake*.[8]

Absent a convincing effort from Defendant as to why the line of cases, and "sham"-related rule, Plaintiff relies upon cannot be applied here[9] and/or why Plaintiff could not survive the pleadings under that approach, the Court cannot rule in Defendant's favor based upon any protection afforded by *Noerr-Pennington*.  Because this is the only argument Defendant has presented with respect to Plaintiff's first and third claims, Defendant's motion is denied with respect to those claims.

Defendant's challenge to Plaintiff's fourth claim is brought pursuant to Rule 12(b)(1).  It is founded on the argument that the Court lacks subject matter jurisdiction over the claim.  But whether or not the Court has federal question jurisdiction over that claim – an issue the Court need not decide now – it clearly has supplemental jurisdiction over the claim.  While the Court still has two potentially viable claims before it by way of federal question jurisdiction, the Court does not see a basis for declining supplemental

---

[7] *Liberty Lake*, in contrast, involved review of a *summary judgment ruling* rejecting an argument for application of the third circumstance.  *See* 12 F.3d at 156.

[8] Defendant instead takes the approach that Plaintiff's argument in its Opposition is "that this court cannot decide the 'sham litigation' exception to the *Noerr-Pennington* doctrine in the context of a Rule 12(b)(6) motion."  Docket No. 29, at 1:9-11.  The Court does not view the argument in quite that manner.  Plaintiff's principal argument is that Defendant simply has not identified the most-applicable test for that exception. In that respect, Plaintiff is correct if it also argues that the Court cannot decide the *Noerr-Pennington* issue on *this* Rule 12(b)(6) motion.

[9] It is conceivable that if Plaintiff's claims were based only upon Defendant sending demand letters, this third "circumstance" would be inapplicable, because there would have been no court for Defendant to have "defrauded."  But, as Defendant admits in its briefing, the filing of lawsuits is part of both Plaintiff's copyright infringement and RICO claims.  In addition, this Court typically does not "dismiss" *parts* of claims – i.e. any theory based solely on the demand letters – as part of a Rule 12(b)(6) motion.

jurisdiction over the fourth claim by way of any of the avenues presented in 28 U.S.C. § 1367(c).

In sum, the Court denies Defendant's motion to dismiss.

## IV.  <u>Conclusion</u>

The Court concludes that the present motions can be ruled upon without the need for oral argument.  Thus, pursuant the C.D. Cal. L.R. 7-15, the April 27 hearing is taken off-calendar.

For the above stated reasons, the Court grants Defendant's motion to strike Plaintiff's second claim for relief.  It denies Defendant's motion to dismiss.